**PETERCHAK, Plaintiff-Appellee, v. CARNEGIE-ILLINOIS STEEL CORPORATION, Defendant-Appellant.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3481. Decided November 16, 1951.

Traxler & Beil, Youngstown, for plaintiff-appellee.
Manchester, Bennett, Powers & Ullman, Youngstown, for defendant-appellant.

## OPINION

By PHILLIPS, J.

Defendant, a steel corporation, amenable to the Workmen's Compensation Act of Ohio, and a self-insurer thereunder, appeals on questions of law from a judgment of the court of common pleas entered upon a jury verdict returned for plaintiff in his action filed therein to review his claim of right to participate in the Workmen's Compensation Fund of Ohio, which was denied him upon rehearing by such commission.

Plaintiff filed his claim to recover compensation for injuries sustained while in defendant's employ, and allegedly acting within the course and scope of his employment with it as a millwright, in March 1947.

On March 18, 1947, when plaintiff returned from work at his place of employment with defendant steel corporation his wife advised him that his right eye was red, to which he responded he didn't remember anything entering it.

About 7:00 P. M. on March 21, 1947, plaintiff applied for first aid to his right eye at defendant's emergency hospital, complained that it was sore, and related to the nurse in charge, and also to his foreman, the conversation had with his wife.

In response to arrangements made by defendant's nurse-employee plaintiff consulted an eye specialist, who treated him for five weeks for "purulent conjunctivitis" of the right eye "due to outside infection." The cornea of plaintiff's right eye was scarred, and such conjunctivitis subsequently spread to the left eye. Plaintiff gave the specialist no history of the presence of a foreign body in either eye.

Plaintiff's witnesses, fellow employees, testified:—

"Q. You didn't see Peterchak get anything in his eye, did you?

"A. The answer is: When?

"Q. When? On March 21st, 1947.

"The Witness: 1947, before, I no see him with bandage.

"Q. With a bandage, did you say?

"A. Before that I didn't see him have a bandage. After that I see that he had something in his eye, and that's all.

"The Witness: And before I no see him.

"Q. Did you say that Peterchak told you that he got something in his eye?

"The Witness: Second time I go move guide down in the hole, Peterchak no say nothing to me, just come out.

"Q. He didn't say anything to you while you were in the hole?

"The Witness: In the hole—

"Q. Now, did he say anything—

"The Witness: Just hide down in the hole.

"Q. Did he say anything to you before he went to the doctor?

"The Witness: Just come up out; then down in the hole, come up out; he swear, 'S - of - a - b, I got something in the eye'."

\* \* \*

"A. Something fell in his eye. I sent him to the hospital and he came back to work in two days with the bandage on his eye. Then he told me that his wife said there was something wrong with his eye."

In answer to a hypothetical question propounded by plaintiff's counsel his physician witness testified:—

"Assuming that the story is correct of Mr. Peterchak having gotten foreign bodies into his right eye on the first occasion, and also assuming that it was necessary for him to continue treatment for as long a period as it was necessary, as he stated, obviously there was more than just a simple foreign body, which usually heals in a short period of time, that is, a superficial corneal body. So assuming then that all the foregoing statements were correct, then I can see where Mr. Peterchak, that the scars on his cornea are secondary to the injury that he received at that time.

"I don't know if I made myself clear, in my previous statement, but in my experience with corneal foreign body, an uncomplicated foreign body that's removed from the cornea and an antiseptic instilled, the usual course is uneventful. However, if the corneal foreign body carried germs in with it, then it leads to what is known as corneal ulcer, and corneal ulcer that is protracted and prolonged in its course usually leads to scarring of the—scarring of more or less severity, de-

pending on the size of the ulcer and the virulence of the organism. I don't know whether that's clear."

Subsequent to the treatment given plaintiff by such oculist another oculist of his own choosing, who did not testify for him, treated him for many months.

By brief defendant's counsel states:—

"It is the contention of the defendant that there is no evidence of an injury to plaintiff's right eye within the meaning of injury as defined in the Workmen's Compensation Act, §1465-68 GC, or as that term has been interpreted by the Supreme Court in the **Malone** case, **140 Oh St 292.** It is defendant's position that the difficulty with plaintiff's eye was due entirely to outside infection and not to injury."

Plaintiff's testimony, offered by himself, of the presence at any time of a foreign body in his right eye was that weeping of that eye was the result of the "dirt that must have gotten into his eye."

Plaintiff's medical expert witness Bloomberg testified to a causal connection between the injury to plaintiff's right eye and his employment, which was based upon a hypothetical question in which it was erroneously stated as a fact that on March 11, 1947, while in the course of his employment a particle, or particles, of dirt entered his right eye. That witness testified "so assuming then that all of the foregoing statements were correct, then I can see where Mr. Peterchak, that the scars on his cornea are secondary to the injury that he received at that time." Further that witness testified that the injury to plaintiff's eye could have been caused by injury or by infection, and he could not tell whether the condition of plaintiff's right eye resulted from injury or infection.

Further defendant contends that the evidence submitted in the trial court is not sufficient "to support a claim for injury under the Workmen's Compensation Act," and supports that statement by citation of the case of **Gerich v. Republic Steel Corporation, 153 Oh St 463,** in which this court was reversed.

Next defendant contends that: "A mere possibility that there is causal connection between an incident and a diseased condition of the eye is not sufficient under Ohio law. There must be at least a probability. **Drakulich v. Industrial Commission, 137 Oh St 82; Industrial Commission v. Lathrop, 52 Oh Ap 55; and Hof v. Industrial Commission, 62 Oh Ap 241.**"

It is observed that neither plaintiff, nor some of his fellow workmen, handle the English language with ease, which makes reading of the record rather difficult at times.

Defendant waived its right to rely on the claimed error that the trial judge erred to its prejudice in overruling its motion

for a verdict to be directed in its favor when it accepted the ruling of the trial court and proceeded with its defense and introduced evidence in its own behalf. **Halkias, Appellee, v. Wilkoff Co., Appellant, 141 Oh St 139.**

Now coming to consider defendant's assignment of error that "the court erred in overruling defendant's motion for a directed verdict in its favor, and at the close of all of the evidence submitted in the case." We can not so conclude, as in our opinion there is evidence warranting submission of the case to the jury. But we conclude that "the verdict of the jury is contrary to law and against the manifest weight of the evidence."

The judgment of the court of common pleas is reversed and a new trial granted and the cause remanded to the common pleas court for further proceedings according to law.

NICHOLS, PJ, GRIFFITH, J, concur.